IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


KERMIT L. NEFF,

                Plaintiff,

v.                                    Civil Action No. 2:04cv32

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.


## REPORT AND RECOMMENDATION
## SOCIAL SECURITY

### I.  Introduction


A.      <u>Background</u>

     Plaintiff, Kermit L. Neff, (Claimant), filed his Complaint on April 29, 2004 seeking Judicial

review pursuant to 42 U.S.C. § 405(g) of an adverse decision by Defendant, Commissioner of Social

Security, (Commissioner).[1]  Commissioner filed her Answer on July 9, 2004.[2]  Claimant filed a

Motion to Supplement the Record with Lost Documents on November 9, 2004.[3]  Claimant filed his

Motion for Summary Judgment and Brief in Support Thereof on November 10, 2004.[4]

Commissioner filed her Motion for Summary Judgment and Brief in Support Thereof on November

---

[1] Docket No. 1.

[2] Docket No. 6.

[3] Docket No. 12.

[4] Docket No. 13.

18, 2004.[5]  Commissioner filed a Supplemental Memorandum on April 11, 2005.[6]  Claimant filed

a Response to Commissioner's Supplemental Memorandum on April 18, 2005.[7]

B.      The Pleadings

        1.      <u>Claimant's Motion to Supplement the Record with Lost Documents.</u>

        2.      <u>Claimant's Motion for Summary Judgment and Brief in Support Thereof</u>.

        3.      <u>Commissioner's Motion for Summary Judgment and Brief in Support Thereof</u>.

        4.      <u>Commissioner's Supplemental Memorandum</u>.

        5.      <u>Claimant's Response to Commissioner's Supplemental Memorandum</u>.

C.      <u>Recommendation</u>

        1.      I recommend that Claimant's Motion for Summary Judgment be DENIED

and that Commissioner's Motion for Summary Judgment be GRANTED because the ALJ was

substantially justified in his decision.  Specifically, the ALJ was not required to obtain a medical

expert.  Also, the ALJ was not required to hold the record open.  In addition, the ALJ properly

reviewed the evidence.  Also, Claimant's subsequent evidence is not new and material.  In addition,

the ALJ properly evaluated the opinions of Dr. Snead, Ms. Kelly, and Dr. Given.  Lastly, the ALJ

properly assessed Claimant's credibility.

## II.  Facts

A.      <u>Procedural History</u>

---

[5] Docket Nos. 14 and 15.

[6] Docket No. 20.

[7] Docket No. 21.

On April 17, 1990 Claimant filed for Social Security Income (SSI) payments and was ultimately denied. On March 18, 1994 Claimant filed his second application for SSI payments alleging disability since June 10, 1988. The application was denied initially and on reconsideration. A hearing was held on December 10, 1996 before an ALJ. The ALJ's decision dated June 25, 1997 denied the claim finding Claimant not disabled within the meaning of the Act. The Appeals Council remanded the case to the Social Security Administration. A supplemental hearing was held on May 14, 2001. The ALJ's decision dated November 29, 2001 denied the claim finding Claimant not disabled within the meaning of the Act. The Appeals Council denied Claimant's request for review of the ALJ's decision on February 25, 2004. This action was filed and proceeded as set forth above.

B.    Personal History

Claimant was 40 years old on the date of the May 14, 2001 hearing before the ALJ. Claimant is illiterate and has no relevant past work experience.

C.    Medical History

The following medical history is relevant to the time period during which the ALJ concluded that Claimant was not under a disability June 10, 1988 - November 29, 2001:

**Psychiatric Review Technique, 7/25/97, Tr. 48-50**
Affective Disorder - Dysthymic Disorder. Slight restrictions daily living and maintaining social functioning. Often deficiencies of concentration. Never episodes of deterioration.

**Work Evaluation Report, 12/15/89, Tr. 160-168**
Excellent work behaviors and work attitudes during the work sample testing process. Demonstrated ability to follow all types of instructions except complex written instructions. Average to above average score for both work rate and work quality. Recommend heavy equipment operation training.

**Fouad H. Abdalla, M.D., 8/5/80, Tr. 242**
X-ray left ankle, normal bony components. No fracture line. Left foot, normal bony components. No fracture line. Right foot fracture of shaft proximal phalanx fourth toe.

**Richard Trenbath, M.D., 7/12/88, Tr. 249**
Logging accident on June 13, 1988. Leg so big did not have a large enough mobilizer. On June 30, 1988 finally able to check leg. On July 12, 1988, feeling much better but knee occasionally gives out on him. Recommend consult.

**Radiology Report, 6/10/88, Tr. 264**
Left femur and left knee. No abnormality. Left lower leg demonstrated abnormality in left tibia or fibula.

**Stonewall Jackson Memorial Hospital, 11/8/88, Tr. 281**
Diagnostic arthroscopy.
The back of the knee cap was severely damaged. Severe chrondromalocia of the patella. Treatment is muscle strengthening. Will always have trouble going up and down hills.

**X-ray, 6/16/89, Tr. 283**
Mandible no significant osseous abnormality. Left knee, no evidence of fracture.

**X-ray, 6/12/89, Tr. 304**
Dorsal spine - no acute finding.
Cervical spine - question of compression on the anterior aspect of C7 and a question of forward sublaxation of C6 or C7.

**CT Scan, 6/13/89, Tr. 306**
Does not confirm any abnormality in the cervical spine to suggest fracture.

**Drs. Lim & Gomez, 12/15/89, Tr. 307**
FINAL DIAGNOSIS:
Obesity, Diabetes Mellitus, Type II., History of injury to left leg.

**Psychological Evaluation, 12/14/89, Tr. 320-322**
I.Q.    Verbal 77, Performance 87, Full Scale 78. Probably could function as mechanics helper or skidder operator.

**Psychiatric Review Technique, 7/27/90, Tr. 328-336**
Residual Functional Capacity Assessment necessary.
Significant subarerage intellectual functioning.
I.Q. Verbal 77, Performance 87, Full Scale 78.
B criteria, slight restrictions on daily living and maintaining social functioning. Often deficiencies of concentration. Never episodes of deterioration.

**Mental Residual Functional Capacity Assessment, 7/27/90, Tr. 337-340**
Not significantly limited 17 of 20 categories.
Moderately limited 3 of 20 categories.

**Harron Clinic, 9/17/90, Tr. 344**
- History of Diabetes; glucosuria;
- Obesity;
- Numerous historical complaints.

**Residual Physical Functional Capacity Assessment, 9/25/90, Tr. 347-354**
PRIMARY DIAGNOSIS:            DM Type II
SECONDARY DIAGNOSIS:         Obesity
EXERTIONAL LIMITATIONS:      None established.
POSTURAL LIMITATIONS:        None established.
MANIPULATIVE LIMITATIONS:  None established.
VISUAL LIMITATIONS:           None established.
COMMUNICATIVE LIMITATIONS: None established.
ENVIRONMENTAL LIMITATIONS: None established.

**Ahmad Husari, M.D., 5/31/94, Tr. 357**
- This is a 33 year old white male with a history of diabetes.   His blood test showed a glucose level of about 400. The patient needs his glucose controlled most likely with insulin supplement.
- Injury to the left knee which appears to be disturbing the patient only minimally.
- History of back pain and neck pain, x-rays are pending.

**Susan Sypolt, M.D., 5/31/94, Tr. 359**
**X-ray, Lumbar Spine**

IMPRESSION:        Limited examination of the lumbar spine.  No fracture.  Satisfactory alignment without spondylolisthesis.

**Ronald Pearse, Ed.D., 6/11/94, Tr. 362-364**
I.Q.    Verbal 83, Performance 92, Full Scale 85
AXIS I:        No diagnosis.
AXIS II:       No diagnosis.
AXIS III:      Diabetes.
AXIS IV:       Severity of psycho social stressors - moderate.
AXIS V:        GAF: Current 61

**Psychiatric Review Technique, Capage, 6/28/94, Tr. 368-376**
No medically determinable mental impairment.
I.Q.     Verbal 83, Performance 92,   Full Scale 85

**Psychiatric Review Technique, 11/18/94, Tr. 389-397**
No medically determinable mental impairment.

**MCS Review and Advice (Physical), 12/5/94, Tr. 398**

Claimant's physical status is non-severe.

**Residual Physical Functional Capacity Assessment, 12/7/94, Tr. 399-406**
PRIMARY DIAGNOSIS:                Poorly controlled D.M.
SECONDARY DIAGNOSIS:              Obesity.
EXERTIONAL LIMITATIONS:           None established.
POSTURAL LIMITATIONS:             None established.
MANIPULATIVE LIMITATIONS:  None established.
VISUAL LIMITATIONS:               None established.
COMMUNICATIVE LIMITATIONS: None established.
ENVIRONMENTAL LIMITATIONS: None established.

**Braxton County Memorial Hospital, 3/24/95, Tr. 414**
FINAL DIAGNOSIS: Uncontrolled Diabetes, Mellitus, Type II, hyperlipidemea, abcess teeth, arthritis of knee.

**Psychiatric Review Technique, Kuz niar, 12/28/95, Tr. 427-435**
No medically determinable impairment.

**Residual Physical Functional Capacity Assessment, 12/28/95, Tr. 436-443**
PRIMARY DIAGNOSIS:                NIDDM
SECONDARY DIAGNOSIS:              Chronic L-S Strain.
EXERTIONAL LIMITATIONS:           None Established.
POSTURAL LIMITATIONS:             None Established.
MANIPULATIVE LIMITATIONS:  None Established.
VISUAL LIMITATIONS:               None Established.
COMMUNICATIVE LIMITATIONS: None Established.
ENVIRONMENTAL LIMITATIONS: None Established.

**Psychological Report, Atkinson, 4/4/96, Tr. 444-451**
AXIS I:       300.4             Dysthymic Disorder, onset 1984
              V61.1             Partner/Relational Problem
              305.00            Alcohol Abuse by history
              315.00            Reading Disorder
              315.1             Mathematics Disorder
AXIS II:      Passive Aggressive Personality w/some borderline features
AXIS III:     See medical reports
AXIS IV:      Problems with primary support group, financial problems
AXIS V:       GAF Scale = 60, moderate difficulty in general functioning

I.Q.    Verbal 81, Performance 83, Full Scale 81

**Mental Residual Functional Capacity Assessment, Tr. 452-456**
Not significantly limited 15 of 20 categories.

Moderately limited 5 of 20 categories.

**Radiology Report, 4/19/96, Tr. 461**
Chest:        No signs of acute infiltrates of signs of failure.

**9/9/96, Tr. 464-467**
EXERTIONAL LIMITATIONS:        No heavy or medium.  Yes, light and sedentary.
POSTURAL LIMITATIONS:          Infrequent climbing, balancing, stooping, all others
                               occasionally.
ENVIRONMENTAL LIMITATIONS: No restrictions.  Chronic mild pain. Functional
[illegible].

**MRI Lumbar Spine, 9/15/96, Tr. 487**
- Generalized decreased signal intensity of the bone marrow on the T-1 weighted images.  Please see above discussion.
- Moderate sized leftward L5-S1 disc herniation as described above.
- Soft tissue in the lateral recess on the left side at L4-5 as described above.

**Lumbar Spine X-Ray, 8/28/96, Tr. 495**
Normal Lumbar Spine

**Psychiatric Evaluation, 12/2/96, Tr. 534-540**
AXIS  I:       Intermittent Explosive Disorder, Substance Abuse, Alcohol by history.  Reading
               Disorder.

AXIS II:       Deferred.
AXIS III:      Diabetes Mellitus.  History of chronic back and leg pain, possible hiatal hernia,
               hyper-cholesteraplemia.

**Dr. Given, M.D., 2/23/97, Tr. 541**
Patient is poorly compliant with his diabetic therapy.

**Radiology Report, Cervical Spine, 12/17/97, Tr. 561**
No radiographic evidence of acute process.

**Dr. Given, M.D., 7/22/98, Tr. 571**
He can probably do light exertion.

**MRI Cervical Spine, 2/15/98**
Minimal bulging in C4-5, C5-6.
No disc herniation is detected.

**Dr. Given, M.D., 3/9/01, Tr. 608**
Diabetes Mellitus, Type I, hyperchalesterolemia, chronic L-S sprain, arthritis, an old left knee fracture and torn rotator cuff of right shoulder.

**Braxton County Memorial Hospital, 12/13/01, Tr. 619**
Dual isotope myocardial perfusion imaging. No evidence of ischemia or infarction.

**Stonewall Jackson Memorial Hospital, 8/13/00, Tr. 685**
MRI of the head. No abnormalities noted in the MRI images of the brain, including internal auditory canal.

**Stonewall Jackson Memorial Hospital, 1/3/00, Tr. 686**
Commuted fracture of middle [illegible] of right index finger.

**Psychiatric Evaluation, Dr. McClure, M.D., 8/17/00, Tr. 703**
AXIS I:      Alcohol dependence, in complete remission. Major depression, non-psychotic. Post traumatic stress disorder.
AXIS II:     Sociopathic traits.
AXIS III:    Diabetes, high cholesterol.
AXIS IV:     Psycho social stressors as noted above.

**Radiology Report, 2/14/00, Tr. 709**
Right hand:          No acute abnormality.
Right wrist:         Normal right wrist.

**Radiology Report, 2/28/01, Tr. 721**
Left shoulder:       No gross signs of acute fracture or dislocations.
Right hand:          Acute fracture involving the distal 4th metacarpal as described.

**EST Lab Report, 9/9/99, Tr. 743**
- Negative submaximal GXT by EKG.
- Leg pain, has low back trouble.
- Await Cardiolite images.

**Specht Myocardial Perfusion Study 9/9/99, Tr. 744**
Negative submaximal dual isotope myocardial perfusion study.

**Dr. Given, M.D., 12/3/96, Tr. 752**
Herniated disc at the L5 level.

**Psychological Evaluation Dr. Kelly, M.A., 4/20/01, Tr. 774-781**
- I.Q.     Verbal 75, Performance 85, Full Scale 78
- Borderline Intellectual Functioning
- Reading Disorder
- Passive-Aggressive and Paranoid Personality Traits
- Possible Personality Disorder, Not Otherwise Specified
- Chronic Dysthymic Disorder
- Psychological Factors Affecting Physical Functioning

- Multiple Medical Problems
- History of Alcohol Abuse, Now Episodic

**Psychiatric Review Technique**
**Dr.  Kelly, M.A., 4/20/01, Tr. 796-809**
Affective Disorder.  Mood Disturbance.
Personality disorder.  Inflexible and maladaptive personality traits.
B Criteria - Moderate restrictions daily living.  Marked difficulties in maintaining social functioning.  Frequent deficiencies of concentration.  Continual episodes of deterioration.

**Mental Impairment**
**Dr. Kelly, M.A., 5/11/01, Tr. 791-792**
Slightly Limited                    10 of 20 categories
Moderately Limited              3 of 20 categories
Markedly Limited                 7 of 20 categories

**Dr.  Snead, M.D., 7/22/01, Tr. 810 -**
DIAGNOSIS:          Residuals of left knee injury with chrondromalacia of the patella.  Cervical spine osteoarthritis.  Herniation lumbar disc L5-S1.  History of fracture of the right index finger.  Diabetes Mellitus.  Multiple psychological abnormalities as detailed in his physiological reports.
- As far as the listings go the patient does not have any physical finding that are mentioned in the listings for example he has no reflex loss no sensory deficit or motor paralysis that can be occasionally found with a ruptured disc but he does have an MRI proven herniated disc.
- As far as the knee goes this diagnosis also does not meet the listing requirements in that there is no gross anatomical deformity and no x-ray evidence of joint space narrowing and he has not had major reconstructive surgery on a major weight bearing joint.  However, arthroscopically we have proven that he has definite disease of the patella articular surface.  However, this problem is not manifested by a limited range of motion.
- Therefore I am prepared to say that the patient's knee and back are in such a condition that they equal the listing and that the impairment of the knee and back are equal in severity to the condition described in the listings for both knee and back disease.  It's also true that this situation has existed for more than one year and in fact has existed since 1994.

**Dr. Snead, M.D., 6/6/01, Tr. 824**
- Equals listing 1.13 and 1.05c.  Capable of sedentary work 9/18/96 to present.

D.     Testimonial Evidence

1. Claimant

Testimony was taken at the hearing from Claimant, who testified as follows (Tr. 854-56,

859, 879-80):

Q        You have a problem with your low back?

A        Yes, sir.

Q        Left leg?

A        Yes, sir.

Q        Anything else?

A        My right arm.

Q        What's wrong with your right arm?

A        My rotator cuff is tore up.

Q        How long have you had that?

A        That's been - - I honestly don't remember t he dates.  It's been a good while.  It's

around '97 or something like that.  I have problems with my ankles and stuff swelling up.  I've

got sores between my toes now.

Q        How long have your ankles been a problem?

A        They swell and stuff when I walk on them - -

Q        How long have you had that problem?

A        I've had it for a long time, but they got worser here not too long ago.  I just called

Dr. Gibbon the other day and see him about it, and he said it would be awhile before he got to

see me because he's all booked up or something.

Q        The ankles a problem before '97 or after?

A        I sprained my ankles or broke them a long time ago, and I have a problem - - of

course, he knows, I told him.  Dr. Gibbon, I told him about.

Q       Okay.  Before '97 or after '97?

A       Well, my ankles, - - well, I broke them a long time ago.

Q       Okay.  How long have they been a problem for you?

A       Really here recently is when they're giving me the most trouble.

Q       Okay.  Any other problems?

A       Headaches real bad.

Q       How long have they been a problem?

A       For most of my life really.  They got worser ever since I had that car wreck and stuff.

Q       Diabetes causing you any problem?

A       Yeah.

Q       What problem?

A       They say it was a lot of time I'll fall asleep suddenly, and I just wake up - - my bad dreams or something like that.  I'd sit up so hard, my sugar gets high. [INAUDIBLE] and it goes down and goes back up.  When my brother and I got fired on a job and I got hurt [INAUDIBLE].  He found me laying over a log once [INAUDIBLE].

Q       How long has the diabetes been a problem?

A       They said - - told me at the time after [INAUDIBLE] - - I had a [INAUDIBLE] accident and I had it years before that.  Because I burnt in a car, and they said it shocked my body [INAUDIBLE] is what caused the [INAUDIBLE].

                        *               *               *

Q       Do you have a memory problem?

11

A       I forget sometimes.  I can't remember a lot of things.

Q       Is it from drinking?

A       No, sir.

Q       Well, what's causing your memory problem?

A       I don't know.  I just don't remember real well sometimes.

Q       All right.  Well, let me come forward then.  Now, did you get your teeth pulled?

A       Yeah.

Q       Do you have dentures?

A       Yeah, but I can't wear them.  They make sores in my mouth.

Q       Okay.

A       I wear them once in awhile when I - - like on business or something.

Q       Okay.  But you normally don't wear them?  What kind of sores do you get in your mouth?

A       Well, blister like things like that.

Q       Ulcers?  Is that what they call them?

A       Yeah, I - -

Q       Has Dr. Gibbon treated you for that off an on?

A       Yeah, some.  I got some now on my feet right now between my toes.

Q       Okay.  Have you had some skin problems from time to time because of the diabetes?

A       I can just move my hand or something like that, and I'm like sore - - it might be a little scratch like that, and then it will end up in a bigger sore looking at it.

Q      So, it doesn't taken much to - - you are pointing to your hand?  It doesn't take much to do - -

A      See how that rash is on my hand there.

Q      Uh-huh.

A      I scratch it or something, it can turn into a bigger - -

Q      Okay.

A      A bigger sore, something like that.

Q      Okay.  I see that.  Now I know you had some trouble with some head lice?

A      Yeah.

## 2. Vocational Expert

Testimony was taken at the hearing from Vocational Expert, who testified as follows (Tr. 884-88):

Q      All right.  All right.  Please assume that a person under consideration with the same age, education, and work experience as this claimant.  Assume that he or she performed exertionally at the light exertional level.  Performed the various partial activities occasionally. He or she has a second grade reading level.  Has a moderate limited ability to understand, remember, and carry out detailed instructions.  Is able to understand, remember, and carry out simple instructions.  He's - - he or she, has a moderately limited ability to complete a dual workday without interruptions on psychologically based symptoms.  He or she has a moderately limited ability to perform past a consistent pace without unreasonable number and length of rest periods.  This person is able to interact appropriately with the coworkers and supervisors.  And we're going to assume for these purposes that this person is sober, and will report for work - -

will not be limited for going to work because of any substance abuse.  Are there jobs existing in the economy that can't be performed within those constraints?

A       Yes, Your Honor.  Office cleaner, light.  400,000 nationally.  8,000 regionally.  The region is West Virginia, eastern Ohio, western Pennsylvania, and western Maryland.  Hand packer, light.  375,000 nationally.  1,700 regionally.

Q       Can you do the national figure again?  370?

A       375,000 and 1,700 regionally.

Q       But is that an exclusive list or that representative of others?

A       It be representative, and, Your Honor, just to be on the safe side to comply with all aspects of that hypothetical, I would reduce those by 30% because of the one stipulation you had in there about completing a normal workday and workweek.  You know, just to be on the safe side.

Q       All right.  So the figures that you gave me, are going to be reduced by 30% - -

A       By 30 - - yes.

Q       All right.  And I wasn't able to write fast enough.  Could you just tell me the region again?

A       West Virginia, eastern Ohio, western Pennsylvania, and western Maryland.

Q       All right.

ALJ    Ms. Van Nostrand?

ATTY All right.  I  - -

ALJ    Wait a minute.  I have another one.  I got - - I side-tracked myself.

BY ADMINISTRATIVE LAW JUDGE:

Q        For my new hypothetical, assume a person the same age, education, work experience as this claimant.  Light exertion.  Occasional partial activities.  This instance, the right arm is able to reach to the shoulder level and this is the dominant to the shoulder level.  So, no working above the shoulder level for reach.  This person has episodic alcohol abuse.  Episodic interference with concentration, persistence, and pace resulting in frequent failing to complete tasks timely one-half to two-third of the workday.  Social adaptability is markedly limited.  This person has a continuing episodes of decompensation at work or work like settings.  Are there jobs available within those constraints?

A        I don't believe so, Your Honor.  I believe that will eliminate work.

Q        Okay.  And of the different factors I noted, which would be the most - - the most prominent factor of concluding the problem.

A        I believe the constant problems with concentration, persistence, and pace resulting in frequent failure to complete tasks would be the most limiting vocational.

Q        All right.  We're going to a third one.  A person with the same age, education, and work experience as this claimant.  The light exertion, occasional postural activities.  No reaching with the   dominant arm above shoulder height.  In this instance, assume that the person is sober.  Is able to understand, remember, and carry out simple instructions.  Moderately limited for detailed instructions.  This person is able to undertake jobs that require a condition of simple, repetitive tasks.  Is moderately limited to complete a normal workday without interruptions from psychologically [INAUDIBLE] symptoms.  Moderately limited to perform at a consistent pace without an unreasonable number and length of break periods.  This person is socially isolated and would perform best as his her own workstation.  Not as [INAUDIBLE].  I'm going a little

fast.  Do you need any of that repeated?

A       I think I've got it.

Q       All right.  Are there jobs existing in those constraints?

A       The office cleaner job would still stand.  All those are done with the evenings.  So that wouldn't interfere with that.  The job of price marker, evening shift.  Like some of the loader concerns - - like Wal-Mart, [INAUDIBLE] a possibility if they didn't have to work in a team type status.  Total number of jobs for price markers are 319,000 nationally.  1,675 regionally.

Q       Is that - - or exclusive as that - - are there others in the PM shift or others?

A       There would be - - there would be some others, but it wouldn't be - -

Q       A huge number?

A       A huge number.

Q       All right.

 E.      Lifestyle Evidence

The following evidence concerning the Claimant's lifestyle was obtained at the hearing and through medical records.  The information is included in the report to demonstrate how the Claimant's alleged impairments affect his daily life.

•       Has a driver's license.  (Tr. 850).

•       Had a drinking problem. (Tr. 853-54, 859).

•       Does some mechanic work for people.  (Tr. 878).

## II.  The Motions for Summary Judgment

A.      Contentions of the Parties

Claimant contends that the ALJ's decision is not supported by substantial evidence.

Specifically, Claimant asserts that the ALJ was required to obtain a medical expert. Also, Claimant maintains that the ALJ was required to hold the record open. In addition, Claimant argues that the ALJ did not properly review the evidence. Also, Claimant would like subsequent evidence to be submitted into the case record. In addition, Claimant contends that the ALJ did not properly evaluate the opinions of Dr. Snead, Ms. Kelly, and Dr. Given. Lastly, the Claimant maintains that the ALJ did not properly assess Claimant's credibility.

Commissioner maintains that the ALJ's decision was supported by substantial evidence. Specifically, Commissioner contends that the ALJ was not required to obtain a medical expert. Also, Commissioner asserts that the ALJ was not required to hold the record open. In addition, Commissioner maintains that the ALJ properly reviewed the evidence. Also, Commissioner asserts that Claimant's subsequent evidence should not be admitted into the record. In addition, Commissioner maintains that the ALJ properly evaluated the opinions of Dr. Snead, Ms. Kelly, and Dr. Given. Lastly, Commissioner asserts that the ALJ properly assessed Claimant's credibility.

B.    <u>The Standards</u>.

1.    <u>Summary Judgment</u>. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations

or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

2. <u>Judicial Review</u>. Only a final determination of the Commissioner may receive judicial review. See 42 U.S.C. §405(g), (h); Adams v. Heckler, 799 F.2d 131,133 (4th Cir. 1986).

3. <u>Social Security - Medically Determinable Impairment - Burden</u>. Claimant bears the burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(1), (d)(2)(A); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

4. <u>Social Security - Medically Determinable Impairment</u>. The Social Security Act requires that an impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(1), (3); Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990); 20 C.F.R. §§ 404.1508, 416.908.

5. <u>Disability Prior to Expiration of Insured Status- Burden</u>. In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status. Highland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(i), 423(c); Stephens v. Shalala, 46 F.3d 37, 39 (8th Cir.1995)).

6. <u>Social Security - Standard of Review</u>. It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence. The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary. Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

7. <u>Social Security - Scope of Review - Weight Given to Relevant Evidence</u>. The Court must

address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting the "substantial evidence inquiry." <u>Milburn Colliery Co. v. Hicks</u>, 138 F.3d 524, 528 (4th Cir. 1998). The Court cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence. <u>Gordon v. Schweiker</u>, 725 F.2d 231, 235-36 (4th Cir. 1984).

8.    <u>Social Security - Substantial Evidence - Defined</u>.    Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

9.    <u>Social Security - Sequential Analysis</u>.    To determine whether Claimant is disabled, the Secretary must follow the sequential analysis in 20 C.F.R. §§ 404.1520, 416.920, and determine: 1) whether claimant is currently employed, 2) whether she has a severe impairment, 3) whether her impairment meets or equals one listed by the Secretary, 4) whether the claimant can perform her past work; and 5) whether the claimant is capable of performing any work in the national economy. Once claimant satisfies Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have listed impairments but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job. <u>Rhoderick v. Heckler</u>, 737 F.2d 714-15 (7th Cir. 1984).

10.    <u>Social Security - Claimant's Credibility - Pain Analysis</u>.    The determination of whether a person is disabled by pain or other symptoms is a two step process. First, the ALJ must expressly consider whether the claimant has demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain alleged. Second, once this threshold

determination has been made, the ALJ must consider the credibility of her subjective allegations of pain in light of the entire record.  Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).

11.    Social Security - New Evidence -Remand - Burden on Claimant.  "A claimant seeking remand on the basis of new evidence under 42 U.S.C. § 405(g) must show that the evidence is new and material and must establish good cause for failing to present the evidence earlier.  Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (en banc).

12.    Social Security - New and Material Evidence - Appeals Council.  Evidence is not "new" if other evidence specifically addresses the issue.  Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991).  Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome.  Id.

13.    Social Security - New Evidence - Consideration by Appeals Council.  The Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision."  Wilkins v. Sec'y, Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (citing Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990)); 20 C.F.R. § 404.970(b).

14.    Social Security - Non-treating physician.  It is the duty of the ALJ, not the courts, to make findings of fact and resolve conflicts in the evidence.  Hayes, 907 F.2d at 1456.  The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied, not to substitute the Court's judgment for that of the Commissioner.  Id.

15.  Social Security - Treating Physician - Controlling Weight - The opinion of a treating physician will be given controlling weight if the opinion is 1) well-supported by medically acceptable

clinical and laboratory diagnostic techniques and 2) not inconsistent with other substantial evidence in the case record. 20 C.F.R. § 416.927(d)(2). <u>See also</u> <u>Evans v. Heckler</u>, 734 F.2d 1012 (4th Cir. 1984); <u>Heckler v. Campbell</u>, 461 U.S. 458, 461 (1983); <u>Throckmorton v. U.S. Dep't of Health and Human Servs.</u>, 932 F.2d 295, 297 n.1 (4th Cir. 1990).

16. <u>Social Security - Ultimate Issue</u>. Whether an individual is disabled or able to work is an issue reserved for the Commissioner. SSR 96-5p. Opinions as to disability or ability to work given by a treating source can "never be entitled to controlling weight or given special significance." <u>Id</u>.

C. <u>Discussion</u>

### 1. ALJ's adversarial attitude

Claimant asserts that the ALJ adopted an adversarial attitude towards counsel and the claimant, which tainted the proceedings and cast doubt on the validity of the hearing process and his decision. Commissioner counters that the ALJ decided the claim on his evaluation of the issues and the evidence of record. Claimant notes two issues to support his Claimant that the ALJ adopted an adversarial attitude and those are the medical expert and holding the record open. The two issues are discussed below.

### 2. Medical Expert

Claimant argues that the ALJ erred by failing to obtain a medical expert (ME) to address the listing issues. Commissioner counters that the ALJ was not required to obtain a ME to address the listing issues.

Claimant cites SS96-6p to support his claim that the ALJ was required to obtain a ME. "An administrative law judge and the Appeals Council must obtain an updated medical opinion from a medical expert . . . [w]hen additional medical evidence is received that in the opinion of the

administrative law judge or the Appeals Council may change the State Agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments. When an updated medical judgment as to medical equivalence is required at the administrative law judge level . . . the administrative law judge must call on the services of its medical support staff." SSR 96-6p.

Claimant's argument has no merit. SSR 96-6p clearly states that a ME is required when the ALJ or the Appeals council opines that additional medical evidence may change the State Agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments. In this case neither the ALJ or the Appeals Council opined that additional medical evidence may change the State Agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments. Accordingly, a ME was not required. Therefore, the ALJ did not err by failing to obtain a ME.

### 3. Holding the Record Open

Claimant maintains that the ALJ violated HALLEX by refusing to hold the record open for 30 days. Commissioner counters that no reversible error occurred by the ALJ refusing to hold the record open.

Claimant cites HALLEX I-2-7-20 for the proposition that the ALJ was required to hold the record open for the Claimant to submit Dr. Given's narrative explanation of his medical records. HALLEX I-2-7-20 deals with post-hearing evidence proposed by the Claimant. In this case Claimant requested to hold the record open during the hearing. Regardless, Claimant requested that the ALJ hold the record open for Dr. Given's "narrative explanation of what he thought was going on during

the [adjudicated] period". (Tr. 845). When making this request the Claimant stated that Dr. Givens "submitted opinions along the way" which have "varied over [] time". (Tr. 845). When making this request Claimant's counsel stated "since his opinions are already in the file, I though that [] would be something that we should do is to re-contact him and ask him to - - ". Dr. Given's records and opinions were already in the file. Also, as the ALJ noted this claim has been going on since 1994 and Claimant has had the same counsel since 1995 and has had ample time to organize his evidence. Therefore, the ALJ was substantially justified in not keeping the record open for an additional period of time.

### 4. Review Standard

Claimant maintains that Appeals Council had vacated the entire previous decision and that Claimant was before the ALJ for a *de novo* hearing. Also, Claimant boldly asserts that the ALJ "left a rather clear impression that he did not intend to view the matter *de novo*." (Plaintiff's Motion for Judgment on the Pleadings, p. 9).

On July 25, 1997 ALJ Buel found Claimant not disabled within the meaning of the Act. The District Court found a conflict between Exhibit 2 and Exhibit 5 and remanded the "case to the Commissioner for findings as to the weight to be accorded the interim evidence and the resulting factual discrepancies." (Tr. 678). The Appeals Council then "vacate[d] the final decision of the Commissioner in this case and remand[ed] the case to an [ALJ] for further proceedings consistent with the order of the court." (Tr. 647). The District Court ordered the Commissioner to resolve the conflict in the evidence, not to re-evaluate the entire case. Therefore, the ALJ properly evaluated the case.

### 5. Subsequent Materials

Claimant has submitted subsequent evidence for review. Commissioner maintains that the subsequent evidence should not be admitted.

"A claimant seeking remand on the basis of new evidence under 42 U.S.C. § 405(g) must show that the evidence is new and material and must establish good cause for failing to present the evidence earlier. Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (en banc). Evidence is not "new" if other evidence specifically addresses the issue. Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. Id. . The evidence must relate to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (citing Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990)); 20 C.F.R. § 404.970(b).

Claimant argues that the record is incomplete. Claimant has already made this argument to the District Court. Judge Keeley stated Claimant "argues that the transcript provided by the Commissioner is incomplete. It is the responsibility of the claimant to provide evidence of his disability. 20 C.F.R. § 416.912(a); English v. Shalala, 10 F.2d 1080, 1084 (4th Cir. 1993), citing Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). Accordingly, the burden is clearly on the claimant to 'furnish medical and other evidence that [the Commissioner] can use to reach conclusions about [the claimant's] medical impairments(s).' 20 C.F.R. § 416.912(a). [Claimant] argues that the Commissioner did not include certain evidence in the transcript, yet he fails to establish that he previously provided the additional evidence to the Commissioner and that the Commissioner knowingly or negligently omitted the evidence. The record appears to contain the entirety of timely submitted evidence and the Court finds no merit to [Claimant's] argument that

the Commissioner provided an incomplete transcript." (Tr. 678-79). Nothing has changed. Judge Keeley's decision was dated November 2, 2000. None of the subsequent evidence submitted by Claimant are dated before November 2, 2000. Therefore, Judge Keeley's decision regarding the record stands.

### 6. Dr. Snead

Claimant maintains that Dr. Snead's report which is one of the subsequently submitted pieces of evidence should be credited. Commissioner counters that Dr. Snead's opinion was already in the record and the ALJ properly did not afford it probative weight.

As discussed above Claimant's subsequent evidence is not admitted into evidence. Also, Dr. Snead's reports were already in the record. (Tr. 269-74, 479, 715-18, 810-35). The ALJ noted that "Dr. Snead asserted that the claimant's knee and back impairments were disabling because they 'equaled' the severity of the condition 'described in the listings for both knee and back disease' (Exhibit 93). I note that in a June 2001 checklist report Dr. Snead indicates that the claimant has normal motor strength. Yet he limits the claimant to sedentary work. Dr. Snead states the claimant can walk for a total of 2 hours in an 8 hour work day and stand for 2 hours in an 8 hour workday. Curiously, Dr. Snead then inconsistently opines in the same report that the claimant could not be on his feet for more than 1 hour total in an 8 hour workday." (Tr. 642). Dr. Snead's opinion is also inconsistent with other substantial evidence in the case record. In May 1996 Dr. Given "responded to interrogatories opining that the claimant was capable of performing work activity at the light exertional level (Exhibit 57). Dr. Given cautioned about functional overlay and pointed out that the claimant had been non-compliant with his appointments for diabetes treatment." (Tr. 638). Also "[i]n July 1998 Dr. Given asserted that the claimant

'probably can do light exertion.'  In January 1999 Dr. Given felt the claimant was 'doing pretty well' except for 'catching and popping' of his left knee."  (Tr. 465, 571, 642).  Psychologist Pearce found Claimant exhibited mild psychological symptoms.  (Tr. 364).  John Atkinson, Jr., MA, opined that Claimant's psychological symptoms were only moderate in nature.  (Tr. 450). Therefore, the ALJ properly evaluated Dr. Snead's opinion.

### 7.  Non-treating psychologist

Claimant maintains that the ALJ failed to make any effort to weigh Ms. Kelly's psychiatric review technique.  Commissioner counters that Ms. Kelly's opinion was not entitled to probative value because it was inconsistent with the evidence of record.

It is the duty of the ALJ, not the courts, to make findings of fact and resolve conflicts in the evidence.  Hayes, 907 F.2d at 1456.  The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied, not to substitute the Court's judgment for that of the Commissioner.  Id.

The ALJ noted that "Ms. Kelly in April 2001 completed a review form in which she indicates the claimant has depression and personality disorders which have met the severity of Appendix 1, sections 12.04 and 12.08 since March 1994 (Exhibit 92).  I first point out that Ms. Kelly did not examine the claimant until April 2001.  She offers no explanation for her extrapolation that the claimant has had listing severity mental impairments for 7 years.  I observe that in June 1994 and march 1996 psychologists indicated that the claimant had only mild to moderate limitation in his mental functioning (Exhibits 42 and 55).  Considering the claimant's inconsistent reports, for example his alcohol consumption has ranged from 'pretty bad' to an occasional ½ gallon to 'not much,' it is most difficult to ascertain how much alcohol abuse has

affected his mental functioning.  Further, Ms. Kelly appears to accepts the claimant's subjective complaints at face value [as discussed below the ALJ properly found Claimant to be not credible] . . . .  Ms. Kelly opines that the claimant continually experiences episodes of deterioration in work and work like settings.  I find no evidence that the claimant has even been in a work or work like setting since 1988.  Indeed, his earning record shows total income of less than $1,500.00 for his entire life . . . . There is no evidence the claimant has experienced as episode of deterioration or decompensation in a work or work like setting."  (Tr. 640).  Therefore, the ALJ properly assessed Ms. Kelly's opinion.

## 7.  Re-contacting Dr. Given

Claimant argues that the ALJ failed to give controlling weight to Dr. Given's opinion and should have re-contacted Dr. Given for clarification regarding the basis of his opinions over time in the longitudinal record.

The opinion of a treating physician will be given controlling weight if the opinion is 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and 2) not inconsistent with other substantial evidence in the case record.  20 C.F.R. § 416.927(d)(2).  See also  Evans v. Heckler, 734 F.2d 1012 (4th Cir. 1984); Heckler v. Campbell, 461 U.S. 458, 461 (1983); Throckmorton v.  U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir.  1990).  Whether an individual is disabled or able to work is an issue reserved for the Commissioner.  SSR 96-5p.   Opinions as to disability or ability to work given by a treating source can "never be entitled to controlling weight or given special significance."  Id.

Dr. Given opined that Claimant was disabled and could not work on numerous occasions. Whether an individual is disabled or able to work is an issue reserved for the Commissioner.  SSR

96-5p.  Dr. Given's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques.  Also, Dr. Given's opinion is inconsistent with other substantial evidence in the case record.  The ALJ noted that in May 1996 Dr. Given "responded to interrogatories opining that the claimant was capable of performing work activity at the light exertional level (Exhibit 57).  Dr. Given cautioned about functional overlay and pointed out that the claimant had been non-compliant with his appointments for diabetes treatment."  (Tr. 638).   The ALJ also noted that "[i]n July 1998 Dr. Given asserted that the claimant 'probably can do light exertion.' In January 1999 Dr. Given felt the claimant was 'doing pretty well' except for 'catching and popping' of his left knee."  (Tr. 465, 571, 642).  Psychologist Pearce found Claimant exhibited mild psychological symptoms.  (Tr. 364).  John Atkinson, Jr., MA, opined that Cliamant's pscyhological symptoms were only moderate in nature.  (Tr. 450).

Accordingly, the ALJ properly determined that Dr. Given's opinion was not entitled to controlling weight.

Claimant asserts that the ALJ was required to re-contact Dr. Given for clarification. However, Claimant does not cite any authority for the alleged requirement.  Nothing in the record supports the notion that the ALJ was required to re-contact Dr. Given for clarification.  Therefore, the ALJ was not required to re-contact Dr. Given.

### 8.  Credibility

Claimant asserts that the ALJ did not properly assess Claimant's credibility in regards to his subjective complaints of pain.  Commissioner counters that the ALJ properly determined Claimant's credibility.

The determination of whether a person is disabled by pain or other symptoms is a two step

process.  First, the ALJ must expressly consider whether the claimant has demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain alleged. Second, once this threshold determination has been made, the ALJ must consider the credibility of her subjective allegations of pain in light of the entire record.  Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).

The ALJ stated that "[t]otally disabling back pain is not a reasonable expectation considering such findings as normal strength, sensation, and reflexes."  (Tr. 641).  This satisfies the first prong of Craig.  The ALJ then went on to consider Claimant's credibility of his subjective complaints of pain in light of the entire record.  The ALJ noted that "claimant contends he is disabled and unable to work; however; he told Ms. Kelly in April 2001 that he works occasionally as a mechanic and sample runner (Exhibit 91).  I observed at the hearing that the claimant was tanned and had sun bleached whiskers and eyebrows.  Judge Bruel at the prior hearing noted that the claimant's hands were dirty, and the claimant explained that he had been helping change a tire.  The clamant's leg was 'crushed' in a 1998 logging accident, however, 'crushed' seems somewhat of an overstatement since the claimant's diagnosis at the time was a ligament strain (Exhibit 30).  In 1994 the claimant stated he was not depressed, but in 1996 he avowed he had been depressed since age 12 or 13 (Exhibits 42 and 55).  The claimant's file indicates he has worked on his girlfriend's house, taken care of his children, gone camping, and gone fishing.  Dr. Given warned in May 1996 that the claimant's alleged impairments were accompanied by 'functional overlay,' and the claimant had been noncompliant with prescribed treatment.  The claimant did not, even though he was advised to, return for mental health treatment.  His reasons for not beginning recommended mental health treatment have varied from

not wanting to 'get made' to 'no transportation.'  The claimant in the past had a 'pretty bad'

drinking problem.  By April 2001 he was drinking less frequently although his concept of

moderation was occasional consumption of a fifth to a gallon of whiskey at a sitting.  By the time

of the May 2001 hearing the claimant was drinking 'not much'." (Tr. 641).  This satisfies the

second prong of Craig.  Therefore, the ALJ properly assessed Claimant's credibility in

accordance with Craig.


**IV. Recommendation**

For the foregoing reasons, I recommend that Claimant's Motion for Summary Judgment

be DENIED and that Commissioner's Motion for Summary Judgment be GRANTED because the

ALJ was substantially justified in his decision.  Specifically, the ALJ was not required to obtain a

medical expert.  Also, the ALJ was not required to hold the record open.  In addition, the ALJ

properly reviewed the evidence.  Also, Claimant's subsequent evidence is not new and material.

In addition, the ALJ properly evaluated the opinions of Dr. Snead, Ms. Kelly, and Dr. Given.

Lastly, the ALJ properly assessed Claimant's credibility.


Any party who appears *pro se* and any counsel of record, as applicable, may, within ten

(10) days after being served with a copy of this Report and Recommendation, file with the Clerk

of the Court written objections identifying the portions of the Report and Recommendation to

which objection is made, and the basis for such objection.   A copy of such objections should be

submitted to the District Court Judge of Record.  Failure to timely file objections to the Report

and Recommendation set forth above will result in waiver of the right to appeal from a judgment

of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to

parties who appear *pro se* and any counsel of record, as applicable.

DATED: June 22, 2005


/s/ James E. Seibert

JAMES E.  SEIBERT
UNITED STATES MAGISTRATE JUDGE